UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

THOMAS WAYNE BIRDSONG                CIVIL ACTION NO. 25-cv-661

VERSUS                              JUDGE EDWARDS

B & D OPERATING CO INC ET AL        MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Thomas Wayne Birdsong ("Plaintiff") owns an 80-acre tract of land in Claiborne Parish.  He filed suit in state court against 22 defendants who allegedly conducted oil and gas operations on the property over the last several decades.  Plaintiff alleged in two counts that Defendants contaminated and damaged the property and are liable for damages.  The petition included a third count against Will Energy Corporation, Rosestone Operating Company, LLC and NR Resources, LLC. The third count alleged Will breached a 2018 surface use agreement, so that defendants Rosestone and NR, who currently conduct operations on the property based on the surface use agreement, no longer have the right to be present on the property.  Plaintiff also filed a motion to evict Rosestone from the property.

Rosestone and NR filed a notice of removal based on an assertion of diversity jurisdiction.  They contend that (1) Plaintiff is a citizen of Louisiana, (2) they are citizens of Texas, and (3) the citizenship of any of the 20 other defendants who are Louisiana citizens may be ignored because the other defendants were improperly joined.  Plaintiff

filed a Motion to Remand (Doc. 10) that argues (1) the notice of removal was untimely and (2) there is not complete diversity of citizenship because at least four of the other properly joined defendants share Plaintiff's Louisiana citizenship. For the reasons that follow, undersigned finds that the removal was timely but recommends that the motion to remand be granted because the defendants have not met their burden of showing that all Louisiana defendants were improperly joined.

**The Petition**

Plaintiff alleges that he owns and uses a tract of property in Claiborne Parish and that he is the lessor or successor in interest to the lessor with respect to certain mineral leases or surface leases that affect the property. The petition lists 22 defendants, including removing defendants Rosestone and NR. Petition, ¶¶ 1-3. "Count One - Property Damage" alleges that "Defendants" (without specification) "conducted or controlled" oil and gas operations on the property or acquired an interest in leases and other contracts covering the property where operations were conducted. The relevant leases include a 1945 mineral lease from L.J. Birdsong to Hunt Oil Company that remains in effect. ¶¶ 5 & 6.

Pursuant to the leases, "one or more defendants" or their affiliates or representatives drilled or operated certain wells. The defendants also constructed and used facilities, tank batteries, and other equipment in connection with the operations. The activities included the installation of unlined earthen pits, pipelines, pumps, and other such items. Plaintiff alleges that the operations were "excessive and unreasonable" and contaminated the soil and/or groundwater. The defendants are also accused of failing to properly operate their

wells and equipment, resulting in the unauthorized discharge of substances to natural drainage and onto the property.  ¶¶ 8-11.

Plaintiff alleges that the defendants abandoned and failed to remove tanks, scrap equipment, pipelines, concrete, and other oilfield debris.  The substances discharged or released by "each defendant" have comingled or combined with the substances left by the other defendants to contaminate and damage the property.  ¶¶12-16.

 Plaintiff alleges that the defendants have breached their obligations under the leases and the law by failing to maintain or restore the property in accordance with the requirements of the leases and the law.  He contends that the defendants who acquired an interest in the leases or conducted operations on the property are obligated to restore the property and are responsible for damage caused by their operations on the property itself or contiguous tracts where pollutants have migrated onto the property.  Plaintiff seeks compensation for the unauthorized use of the property for storage or disposal of the substances and oilfield debris.  ¶¶ 17-26.

Plaintiff alleges that the defendants breached their duties of good faith to him by concealing or not disclosing the fact that their operations on the property and contiguous areas were causing damage.  Plaintiff alleges that he and others have been unwittingly exposed to the substances left by the defendants, and the presence of the substances and oilfield debris interferes with his ability to use and enjoy the property and has diminished its value.  The use of trucks and heavy machinery has damaged or inhibited the vegetation and wildlife habitat on the property and altered the natural drainage. Plaintiff contends that he sustained damages for (a) the cost to evaluate and clean up the property, (b) the

diminution in value of the property even after it has been cleaned up, (c) the cost to restore the natural drainage, wildlife, and vegetation, (d) lost revenues, (e) exposure to potential liability to the government, neighbors, and others, and (f) other losses and damages.  ¶¶ 27-37.

"Count II - Unauthorized Disposal of Salt Water" complains about produced water, which is the water that is extracted along with oil and gas during production.  It is often reinjected underground.  Am. Petroleum Inst. v. E.P.A., 661 F.2d 340, 343 (5th Cir. 1981). Plaintiff alleges that "[s]ome of the defendants have injected produced water" into the Birdsong SWD #6 well, and "[s]ome of the defendants who injected produced water" into the well failed to observe and comply with all of the laws and regulations applicable to such operations.  Plaintiff contends that none of the relevant leases authorizes the injection of produced water into the well from the sources from which the water was obtained.  ¶¶ 38-41.

The defendants who engaged in this alleged unauthorized injection of produced water are accused of a trespass.  Plaintiff contends that, as a result of the trespass, he is entitled to recover all damages incurred in connection therewith, including physical damage to the property, lost revenues, disgorgement of money made by the trespassers, and diminution of property value.  ¶¶ 42-43.

"Count III - Termination of the 2018 Lease, Breach of Implied and Express Restoration Clauses, Trespass, and Damages" focuses on the alleged breach and termination of a surface use agreement.  Plaintiff alleges that he entered into a surface use agreement with Will Energy Corporation in 2018.  The agreement/lease allowed Will

Energy to use the property in exchange for an annual $2,000 rental payment due each September 30.  Plaintiff alleges that no rental was paid for 2024, meaning the lease terminated no later than September 30, 2024.  ¶¶ 44-46.

Plaintiff alleges that Will Energy and its successors were obligated under the lease to restore the surface back to its original condition, as near as reasonably practicable following cessation of operations, within 90 days after the completion of operations or abandonment of the facilities.  Plaintiff contends that more than 90 days has elapsed since the termination of the 2018 lease, but the surface of the property has not been restored.  ¶¶ 47-49.

Plaintiff alleges that, after the termination of the 2018 lease, NR, who is one of Will Energy's assigns, and Rosestone, who is believed to be NR's contract operator, have continued to use the property "and inject produced water" into the Birdsong SWD #6 well despite not having the right to do so.  Plaintiff alleges that this is a trespass and that he is entitled to recover all damages incurred in connection with the breach of the 2018 surface lease and associated trespass.  Those damages include physical damages to the property, lost revenues, lost leasing opportunities, the disgorgement of money made or received by NR and Rosestone, and diminution of property value. ¶¶ 50-51.

The petition concludes with a prayer that all of the defendants be declared responsible for environmental damage to the property and that they be ordered to submit a plan of remediation to the Louisiana Office of Conservation.  Plaintiff prays for an award of monetary damages in an amount necessary to evaluate and clean up the property, remove oilfield debris, fix drainage issues, restore vegetation and wildlife, and compensate Plaintiff

for diminution in value, trespass and unauthorized use, lost revenues and opportunities, and disgorgement of revenue earned by the defendants. Plaintiff also prays for attorney's fees, as well as punitive damages against those defendants who operated when La. Civ. Code art. 2315.3 was in effect.

**Timeliness of the Removal**

### A. Introduction

A defendant must file a notice of removal (1) within 30 days after service of the initial petition or (2) if the case stated by the initial petition is not removable, within 30 days after receipt of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b)(1) and (3).

Rosestone states in its notice of removal that it was served with the petition "on or after March 1, 2025." Plaintiff points to a service return that indicates Rosestone was served on March 5, 2025. No representation is made as to whether or when NR was served. The notice of removal was filed on May 14, 2025, which was more than 30 days after service of the petition on Rosestone.

### B. The Initial Petition

The first question is whether service of the petition on Rosestone triggered its obligation to remove within 30 days. If so, the removal is untimely. Service of an initial petition does not trigger the first removal period unless "that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir.

1992).  This "bright line rule" adopted by the Fifth Circuit "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know."  Id.  If a plaintiff "wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, [he must] place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount."  Id.

Plaintiff's petition alleged environmental damages and diminution of property values to the tract of land.  In accordance with Louisiana law, La. Code Civ. Proc. art. 893, the petition did not pray for a particular amount of damages.  It asked for an award of reasonable damages in various categories.  Plaintiff argues that the removing defendants should have removed within 30 days of service of the original petition because the amount of the damages was obvious based on the petition and the removing defendants' knowledge about the property.

Plaintiff's argument lacks merit under Chapman's bright line rule, as demonstrated by Mumfrey v. CVS Pharmacy, Inc., 719 F.3rd 392 (5th Cir. 2013), where a pharmacist's original petition alleged wrongful termination and prayed for categories of damages such as lost wages, mental anguish, and attorney fees, but did not (per Texas law) specify an amount in controversy.  The defendant moved the state court to order the plaintiff to specify the maximum amount at issue, and the plaintiff filed an amended petition that claimed $3,575,000 in damages.  The Fifth Circuit held that the original petition did not trigger the removal period under Chapman despite the categories of damages claimed and the subjective knowledge of the former employer about the amount of salary at stake.  The

original petition did not affirmatively reveal on its face that the plaintiff was seeking more than $75,000, so the removal period did not begin until the amended petition was filed.

Mumfrey and Chapman prevent the service of Plaintiff's initial petition in this case from triggering the removal period. The petition presented claims for damages that any reasonable person would immediately recognize were for more than $75,000, but the Fifth Circuit's "bright line rule" from Chapman required that Plaintiff include in his petition "a specific allegation that damages are in excess of the federal jurisdictional amount" to trigger the removal period.[1]  He did not do that, so the removal period was not triggered.

### C. Other Paper; Notice to Vacate

Plaintiff argues, alternatively, that the notice to vacate that Rosestone received on April 7, 2025 commenced the removal period, making the May 14, 2025 removal untimely. Section 1446(b) commences the removal period when "other paper" is served for which it may first be ascertained that the case is or has become removable.  Matters outside the formal pleadings may trigger the removal clock.  Addo v. Globe Life & Acc. Ins. Co., 230 F.3d 759 (5th Cir. 2000) (settlement letter).

Whatever the form of the other paper, it does not trigger the removal period under Section 1446(b)(3) unless "the information supporting removal" in the paper is

---

[1] Plaintiffs are not required to plead an actual dollar amount to trigger the removal period by service of the original complaint.  He can include a general allegation that the damages exceed the jurisdictional amount for federal diversity jurisdiction.  Allen v. Bulk Logistics, Inc., 485 F. Supp. 3d 691, 696 (S.D. Miss. 2020).  Plaintiffs in cases removed to this court often include an allegation in their state court petition that the amount in controversy exceeds $75,000. That triggers the removal period and avoids unnecessary discovery and other proceedings that are sometimes required when the amount in controversy is uncertain.

"unequivocally clear and certain" that the facts now support removal.  Bosky v. Kroger Texas, LP, 288 F.3d 208, 211 (5th Cir. 2002), clarified in Mumfrey, 719 F.3d at 400; Morgan v. Huntington Ingalls, Inc., 879 F.3d 602, 609 (5th Cir. 2018).  "Bosky should be read as imposing a trigger for the second removal period that is at least as strict as that set forth in Chapman."  Smith v. Wal-Mart Louisiana, LLC, 2013 WL 4781778, *3 (W.D. La. 2013) (Hayes, M.J.).

The notice to vacate (Doc. 1-23, p. 5) sent to Rosestone was in the form of a letter to its registered agent.  It demanded that Rosestone vacate the described property within 5 days.  The notice mentioned that Rosestone had been served with this suit that seeks damages for Rosestone's operations, trespass, and breach of the surface use agreement that was said to have terminated the prior year based on nonpayment of rental.  The one-page letter made no demand for any particular amount of damages.

Plaintiff argues that the removing defendants should have known that the amount in controversy exceeded $75,000, especially once they received the notice to vacate the premises.  But a party's subjective knowledge of the damages at issue, or what it could or should have estimated, is irrelevant to the commencement of the removal period under Chapman's "affirmatively reveals on its face" standard for the initial petition and Bosky's "unequivocally clear and certain" requirement for other paper.

This is demonstrated by Cole ex rel. Ellis v. Knowledge Learning Corp, 416 Fed. Appx. 437 (5th Cir. 2011), where a case filed in a Louisiana state court alleged that a three-year-old child was struck in the face with a 2x4 piece of lumber while in a daycare facility. Discovery responses from the plaintiff indicated medical bills of about $3,400, a physician

recommendation of cool compresses and OTC pain relievers, and CT scan and X-ray results that reported no abnormalities.  The plaintiff argued that the discovery responses triggered the removal period because the defendant could have ascertained from quantum research of Louisiana decisions in similar cases that the amount in controversy was satisfied.  The Fifth Circuit rejected the argument, agreeing with the defendant that the necessity of independent research to ascertain the amount in controversy showed that the discovery responses were not unequivocally clear and certain.  It was not until the plaintiff delivered a $125,000 settlement demand letter that the defendant could clearly ascertain removability from the face of the other paper.

The <u>Bosky</u> rule was also applied in similar circumstances in <u>Manieri v. CR England, Inc.</u>, 2019 WL 2022535 (E.D. La. 2019) (Feldman, J.).  The plaintiff was injured in a car accident and filed suit in state court.  A defendant removed the case several months later, and the plaintiff moved to remand on the grounds that the removal was untimely because the removal period had been triggered by "other paper" in the form of discovery responses. The plaintiff pointed to discovery responses that said her injury resulted in more than $14,000 in medical bills, over $4,000 in lost wages, and a physician recommendation of cervical epidural steroid injections and a referral to another physician to consult regarding whether she was a candidate for surgery.  A later set of updated medical records included an opinion that a cervical disc bulge required surgery and that the plaintiff would continue the injections.  But none of the documents referred to the cost of any of the treatment.  The court found that neither set of papers triggered the removal period under Section 1446(b)(3) in the absence of a specific damages estimate that would meet the <u>Bosky</u> standard.  The

undersigned has applied <u>Bosky</u> to routinely recommend denial of similar motions to remand by plaintiffs who argued that removal was untimely but could not point to other paper that specifically revealed that more than $75,000 was at issue.  <u>Farish v. Walmart Stores, Inc.</u>, 2019 WL 12313450, *3 (W.D. La. 2019) (collecting cases).

The original petition did not trigger the removal period under <u>Chapman</u>.  Plaintiff has not pointed to "other paper" served outside the 30 days prior to the removal that made it unequivocally clear and certain under <u>Bosky</u> that Plaintiff was seeking more than $75,000.  Accordingly, the timeliness challenges raised by Plaintiff lack merit.  The removing defendants might have chosen to attempt removal earlier based on the information they had.  But the removal period, which would force them to remove within 30 days, is not triggered just because a defendant has information that it could use to remove a case and meet its burden of establishing the requisite amount in controversy. <u>Mumfrey</u>, 719 F.3d at 400 n. 13.

The removing defendants state that they chose to remove within 30 days after service of a motion to evict first alerted them that the amount in controversy exceeded $75,000.  The court need not decide whether this is credible or whether the motion triggered the removal period.  It need only decide whether service of the original petition or notice to vacate, which were served more than 30 days before the removal, triggered the removal period.  They did not.

**Fraudulent (Procedural) Misjoinder**

The removing defendants have changed the basis for their improper joinder plea over the course of the case.  Their notice of removal asserted that the surface use agreement

claims under Count III were "factually and contractually distinct" from the general tort and environmental claims asserted in Counts I and II.  They urged that the court should look only to the citizenship of the defendants in Count III, which included them, because the claims against the non-diverse defendants in the other counts were not properly *procedurally* joined with the breach of lease claim, citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996).

But the removing defendants, in their memorandum in opposition to the motion to remand, did not cite Tapscott or otherwise refer to this "procedurally improper joinder" argument.  That may be because they discovered that the Fifth Circuit "has recently declined to adopt procedural misjoinder (also called fraudulent misjoinder) as adopted by the Eleventh Circuit in Tapscott."  Ticer v. Imperium Ins. Co., 20 F.4th 1040, n. 11 (5th Cir. 2021), citing Williams v. Homeland Ins. Co. of New York, 18 F.4th 806, 814-15 (5th Cir. 2021).  Accordingly, the court need not address this asserted basis for removal, and the defense's procedural arguments regarding improper cumulation of claims and the like may be ignored.

**Waiver of Improper Joinder**

The notice of removal focused on the invalid Tapscott theory of procedural misjoinder. The removing defendants pivoted to the traditional improper joinder argument in their memorandum in opposition to the motion to remand.  They potentially waived the improper joinder argument by not adequately asserting it in their notice of removal.

The removal statute, 28 U.S.C. § 1446(a), requires that the notice of removal provide a "short and plain statement of the grounds for removal," which "shall be so

construed as to do substantial justice." Ticer, 20 F.4th at 1045, citing Rachel v. State of Ga., 342 F.2d 336, 340 (5th Cir. 1965). Generally, a defendant must adequately inform the plaintiff of the grounds for removal, but a detailed grounds setting forth basis for removal is not necessary. Ticer, 20 F.4th at 1045-46. The defendant in Ticer raised both procedural misjoinder and improper joinder in its notice of removal, and it cited a Fifth Circuit decision which addressed both. That was deemed sufficient.

The removing defendants in this case asserted in the notice of removal that Plaintiff "improperly and fraudulently joined claims against non-diverse and unrelated defendants to defeat diversity jurisdiction." It focused on the lack of procedural propriety in joining the claims, but in addition to Tapscott it cited Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529 (5th Cir. 2006), which discussed both procedural misjoinder and improper joinder. Plaintiff has not argued for waiver, and he focused on the traditional form of improper joinder in his motion to remand. Accordingly, the court does not find that the removing defendants waived the improper joinder plea under these circumstances.

**Improper Joinder**

### A. Introduction; Burden

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship. Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff. That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal. To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed. Bobby Jones Garden

Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968). The Fifth Circuit now uses the term "improper joinder" to describe the doctrine. Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Smallwood, 385 F.3d at 573. Only the second way is argued in this case. To prevail, the removing defendants must show that there is no reasonable basis for the court to predict that Plaintiff might be able to recover against any of the non-diverse defendants. Id.; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings: (1) a Rule 12(b)(6)-type challenge to the pleadings alone or (2) an effort to pierce the pleadings and demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all of the facts necessary to prevail. International Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd., 818 F.3d 193, 207 (5th Cir. 2016). The improper joinder assessment in this case is under the Rule 12(b)(6) approach.

Even though the petition was filed in state court, the improper joinder review incorporates the federal pleading requirements of Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) that the petition provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level and state a claim that is plausible on its face. International Energy Ventures Management, LLC, 818 F.3d at 200-208.

### B. Analysis

Plaintiff is a Louisiana citizen, and he contends that at least four of the defendants are also Louisiana citizens. Pinnacle Operating Company, Inc. admits that it is a Louisiana corporation with its principal place of business in Louisiana. Doc. 21. L'Oil Operating and Management Co., Inc. is alleged to be a Louisiana corporation, and the Secretary of State's website supports that allegation. B&D Operating, Inc. and Will Energy Corporation are alleged to be inactive Louisiana corporations.

The parties debate the effect on diversity jurisdiction of Louisiana corporations B&D and Will Energy being inactive, so that issue will be set aside unless the assessment of jurisdiction demands that it be considered. It is not disputed that Pinnacle and L'Oil are citizens of Louisiana, and both are named as defendants in Counts I and II of the petition that accuses the defendants of causing environmental damage and wrongfully disposing of produced water. Accordingly, the removing defendants have the heavy burden of showing that there is no reasonable basis for the court to predict that Plaintiff might be able to recover against either of them under Louisiana law.

Plaintiff's petition alleges that all defendants "breached their obligations under the Leases and the law by failing to maintain and/or restore the Property in accordance with the requirements thereof and the law." ¶ 18. The prayer asked that the defendants be held solidarily liable. This type of suit is known as "legacy litigation" because the suits "often arise from operations conducted many decades ago, leaving an unwanted 'legacy' in the form of actual or alleged contamination." Loulan Pitre, Jr., "Legacy Litigation" and Act 312 of 2006, 20 Tulane Environmental Law Journal 347, 348 (2007).

The removing defendants make no argument that Louisiana law does not provide for the potential liability of an oil and gas lessee or other person conducting activities on leased premises for polluting or otherwise damaging the property.  Courts have recognized that Louisiana law may allow a lessee to be held solidarily liable with its predecessors in title for damages caused by them.  Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp., 2011 WL 5825791 (W.D. La. 2011); Glen Hope Inc. v. Chevron USA Inc., 2023 WL 2732986, *5 (W.D. La. 2023) (Whitehurst, M.J.) ("This Court … agrees [with Sweet Lake] that the Mineral Code and Louisiana lease law impose obligations for restoration upon mineral lease assignees and sublessees, and that lessors may seek to recover applicable damages directly from such parties.").

The removing defendants do not argue that any particular defendants were improperly joined in Counts I or II.  They instead argue that those two counts "should be dismissed as to all defendants" because the counts are based on "group pleading" that does not specify which of the 22 defendants committed which particular acts or omissions.  The defendants also fault the counts for not detailing Plaintiff's "relationship and role" with respect to each defendant, not identifying a particular contractual provision that was breached, not identifying what contractual provision gives Plaintiff an alleged status as a third-party beneficiary, not explaining how Plaintiff acquired rights to own and use the property, and not providing the dates of specific events or omissions that support Plaintiff's claims.

Such a general attack is not a sound basis for an improper joinder plea.  "[W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis

for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit." Smallwood, 385 F.3rd at 574. "In such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper." Id. "[T]he burden on the removing party is to prove that the joinder of the in-state parties was improper—that is, to show that sham defendants were added to defeat jurisdiction." Id. at 575. "A showing that the plaintiff's case is barred as to all defendants is not sufficient." Id. "When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." Id. The removing defendants have launched a wholesale attack on the merits of two counts with respect to *all* defendants. That argument does not support a plea that the Louisiana defendants were improperly joined in those counts to defeat diversity.

Furthermore, the defendants do not contend that tort and contract claims of the nature asserted in counts one and two are not permitted under state law. They fault only the lack of detail in Plaintiff's allegations. The only authority they cite is Green v. Strickland, 2022 WL 855294 (W.D. La. 2022) (Foote, J.), which addressed qualified immunity defenses against civil rights claims brought by 17 plaintiffs against 21 police officers. The court criticized the complaint because it did not clearly identify the nature of the claims, the source of the right each specific plaintiff asserted against a specific defendant, and lumped defendants together without alleging who did what to whom. Such

specificity is required in civil rights complaints because qualified immunity claims must be addressed separately for each individual defendant.  Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007).

The Fifth Circuit has also rejected group pleading in other contexts.  For example, it affirmed the Rule 12(b)(6) dismissal of defendants when oyster farmers sued several entities involved in oil and gas exploration and production that they accused of releasing brine. The claims were found lacking in adequate factual support because they did not allege which defendant harmed the plaintiffs and in what way. The Court noted that the complaint "is more akin to a 'group pleading' complaint, which this Court has rejected." Matter of Settoon Towing, L.L.C., 2024 WL 3520166, *1 (5th Cir. 2024), citing Armstrong v. Ashley, 60 F.4th 262 (5th Cir. 2023).

But a "group pleading" attack in the improper joinder context was rejected in Valadez v. Federal Express Corporation, 2025 WL 1570427, *5 (W.D. Tex. 2025).  The court said that "just because a pleading lumps defendants together does not mean that there is no reasonable possibility of recovery against the nondiverse defendant."  And "[f]or purposes of improper joinder, courts may filter the other defendants from the shotgun pleading and view the allegations as being only asserted against the in-state defendant." Id.

Another district court found that no plausible claim was asserted against two non-diverse defendants, but not merely because the plaintiff filed a shotgun pleading.  The court stated: "While it may be true that shotgun pleadings are disfavored, [the defendants] have not cited to any binding precedent in the context of removal and a motion to remand,

wherein a court has held that shotgun pleadings alone provide an adequate basis for concluding that a nondiverse defendant has been improperly joined to defeat diversity jurisdiction." Slocum v. Allstate Ins. Co., 2020 WL 428021, *5 (S.D. Miss. 2020).

Valadez and Slocum are consistent with Smallwood's holding that general attacks on the merits that apply to all defendants, not just the non-diverse or in-state defendants, do not support an improper joinder plea. If the Valadez approach is followed here, the court filters the other defendants from Plaintiff's (shotgun) petition and views the allegations as being asserted only against the Louisiana defendants. There are sufficient allegations to state plausible tort and contract claims against Pinnacle and L'Oil, both of which are active corporations that are Louisiana citizens. The court need go no further because "the existence of even a single valid cause of action against the in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." Gray v. Beverly Enterprises–Mississippi, Inc., 390 F.3d 400, 412 & n. 11 (5th Cir. 2004) (and cases cited therein).

**Statutory Fees**

An order remanding a case to state court may require payment of "just costs and any actual expenses, including attorney fees," that were incurred as a result of removal. 28 U.S.C. § 1447(c). The standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees only where the removing party lacked an "objectively reasonable basis" for seeking removal. Martin v. Franklin Capital Corp., 126 S.Ct. 704, 711 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." Id.; Omega Hosp., LLC v. Louisiana Health

Service & Indem. Co., 592 Fed. App'x 268 (5th Cir. 2014) (reversing award of fees because there was an objectively reasonable, although unsuccessful, basis for removal).

This standard does not require a showing that the decision to remove was frivolous or without foundation. The question is whether the removing party lacked an objectively reasonable basis for removal, which is determined in light of the relevant case law on subject matter jurisdiction at the time of removal. CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc., 638 F. Appx. 255, 260 (5th Cir. 2015).

The undersigned recommends that the court exercise its discretion to deny fees even though the removing defendants arguably lacked an objectively reasonable basis to pursue the improper joinder plea. The deadlines associated with removing a case come fast. Counsel must act quickly within that time, and they do not always have adequate time to fully research the applicable facts and law, especially in a case of this complexity. The undersigned is convinced that the recommended grant of the motion to remand is correct, but reasonable minds could perhaps reach a different conclusion.

A reasonable person might have elected to pursue the improper joinder theory based on the information available at the time of removal. Plaintiff's broad style of pleading against all the defendants as a group can be seen as inviting such a challenge, even though further exploration has determined that the pleading style is not, alone, adequate to show improper joinder. The best exercise of the court's discretion under these circumstances is to deny the request for fees and costs.

**Rule 11 Sanctions**

Plaintiff's reply memorandum makes a brief assertion that the removal violated Fed. R. Civ. Pro. 11.  "As a general matter, a district court is not required to address new legal issues raised only in a reply brief."  Magnolia Island Plantation, L.L.C. v. Whittington, 29 F.4th 246, 251-52 (5th Cir. 2022).  Furthermore, Rule 11(c)(2) requires that a motion for sanctions "must be made separately from any other motion" and "must be served" on the opposing party, "but it must not be filed or be presented to the court if the challenged paper … is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  This "safe harbor" provision in Rule 11 is a mandatory prerequisite, and the served motion and filed motion must be identical.  Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc., 46 F.4th 374, 387–88 (5th Cir. 2022).  Plaintiff has not demonstrated compliance with these procedural requirements, so Rule 11 sanctions are not available.

**Conclusion**

The parties have briefed a number of peripheral issues, such as the impact of inactive corporations on diversity and whether Plaintiff sued the proper Will Energy Corporation (Texas or Louisiana version), but the only issue that must be decided to resolve the motion to remand is the improper joinder plea.  The Louisiana plaintiff has stated a plausible claim under state law against at least one active Louisiana corporation, so the improper joinder plea fails, the court lacks subject matter jurisdiction, and remand must be granted. Accordingly,

It is recommended that Plaintiff's Motion to Remand (Doc. 10) be granted and that this case be remanded to the Second Judicial District Court, Claiborne Parish, Louisiana for lack of subject matter jurisdiction.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of June, 2025.

Mark L. Hornsby
U.S. Magistrate Judge